FILED
2025 JUL 21 AM 11:35
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

———

Jane Doe,

Plaintiff,

v.

Extra Space Storage Inc.,

OpenTech Alliance, Inc., and

StorageTreasures.com,

Defendants.

Civil Action No. _____

Case: 2:25–cv–00590
Assigned To : Kimball, Dale A.
Assign. Date : 7/21/2025
Description: Doe v Extra Space
Storage et al

COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF, DAMAGES, AND
DECLARATORY RELIEF

JURY TRIAL DEMANDED

———

## INTRODUCTION

Plaintiff Jane Doe, a disabled veteran and trauma survivor, brings this civil rights action for
emergency injunctive relief and damages arising from Defendants' knowing refusal to halt a
pending public auction of her private storage unit scheduled for July 23, 2025 at 12:00 PM,
despite being repeatedly informed of her disability, housing crisis, active litigation, and the unit's
sensitive contents.

This case involves the threatened auction of irreplaceable property, including:

• Medical records, trauma documentation, and VA evidence

• Sacred spiritual artifacts and family heirlooms

• Sealed legal files related to pending court proceedings

• The cremated remains of the Plaintiff's mother-in-law, a suicide victim

Despite multiple ADA requests and formal notice of ongoing court filings, Defendants have failed to accommodate Plaintiff's disability or pause their auction procedures. If not stopped, this auction will inflict irreparable harm, violate federal law, and destroy court-protected materials.

Plaintiff seeks emergency relief under Rule 65 of the Federal Rules of Civil Procedure to prevent this irreversible violation of her constitutional, statutory, and human rights.

———

JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), as this action arises under:

• Americans with Disabilities Act (42 U.S.C. §§ 12132, 12182, 12203)

• Rehabilitation Act of 1973 (29 U.S.C. § 794)

• The Privacy Act of 1974 (5 U.S.C. § 552a)

• The First and Fourteenth Amendments to the U.S. Constitution

• 42 U.S.C. § 1983

2. This Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367, including claims under:

• Virginia Self-Service Storage Facility Act (Va. Code § 55.1-2900 et seq.)

• Virginia Consumer Protection Act (Va. Code § 59.1-196 et seq.)

• Tort law (conversion, intentional infliction of emotional distress, constructive fraud)

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because:

• Defendant Extra Space Storage Inc. is headquartered in Salt Lake City, Utah

• Defendant OpenTech Alliance operates infrastructure from Utah

• Digital auction operations are coordinated and hosted from Utah

• A substantial portion of the conduct and infrastructure underlying this harm originates from this jurisdiction

---

PARTIES

Plaintiff Jane Doe is a medically retired U.S. military veteran, sexual assault survivor, and mother of five. She brings this action under a pseudonym due to the nature of her trauma, pending sealed litigation, and risk of public exposure. She resides in the Commonwealth of Virginia and has maintained a storage unit with Extra Space Storage since 2021.

Defendant Extra Space Storage Inc. is a national storage corporation headquartered in Salt Lake City, Utah, operating thousands of storage facilities nationwide, including the facility where Plaintiff's property is held. It has full control over auction decisions.

Defendant OpenTech Alliance, Inc. is a Utah-based technology provider that manages the digital interface and communications infrastructure used to initiate and process storage auctions.

Defendant StorageTreasures.com is an auction platform used by Extra Space Storage and OpenTech to list and sell personal property through online public lien sales.

All Defendants are jointly and severally responsible for the violations described herein.

---

EMERGENCY REQUEST FOR INJUNCTIVE RELIEF

Plaintiff respectfully moves this Court for a temporary restraining order and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure.

• Auction Date: July 23, 2025, at 12:00 PM ET

• Threatened Harm: Loss of medical, legal, spiritual, evidentiary, and ancestral property

• Pending Litigation: Multiple court cases involving Plaintiff's trauma, disability, and institutional misconduct

• Public Exposure Risk: Sensitive records, rape documentation, and sacred items may be disclosed or destroyed

• Known ADA Status: Plaintiff repeatedly identified as disabled, medically vulnerable, and seeking relief

Defendants have declined to pause or cancel the auction despite formal notice of Plaintiff's federal rights, sealed litigation, and ongoing requests for accommodation. If the auction is not enjoined, the harm will be permanent and irreversible.

## FACTUAL ALLEGATIONS

1. Plaintiff Jane Doe is a disabled veteran, trauma survivor, and mother of five children. She suffers from complex post-traumatic stress disorder, severe anxiety, and other medical conditions stemming from military sexual trauma, institutional abuse, and systemic displacement. She resides in the Commonwealth of Virginia.

2. Since 2021, Plaintiff has maintained a personal storage unit at an Extra Space Storage facility located in Virginia. That unit contains irreplaceable property including medical records, military and VA documentation, sealed legal filings, sacred spiritual items, ancestral heirlooms, and the cremated remains of her husband's mother who died by suicide.

3. Over the past two years, Plaintiff has endured cascading harm including housing instability, medical denial, court obstruction, and family trauma. These hardships have been exacerbated by bureaucratic failures within the VA and other federal agencies.

4. In light of these challenges, Plaintiff repeatedly requested reasonable accommodations from Extra Space Storage, beginning in 2023 and continuing through the present. She informed the company, both verbally and in writing, of her disability, trauma history, housing displacement, and ongoing court cases. She explicitly requested protection under the Americans with Disabilities Act and pleaded for relief from aggressive auction procedures.

5. Despite receiving formal ADA notices and legal documentation, Extra Space Storage and its agents refused to modify their process or suspend the auction timeline. Plaintiff's communications were either ignored or met with inflexible responses that failed to acknowledge her disability rights.

6. On or about July 10, 2025, Plaintiff was informed that her storage unit had entered the lien auction process. The auction is currently scheduled to take place on July 23, 2025 at 12:00 PM Eastern Time.

7. The auction listing was posted publicly on StorageTreasures.com. It identified Plaintiff by name, location, and unit contents despite prior warnings that this disclosure would expose her to

retraumatization and violate her right to pseudonymity as a trauma survivor involved in sealed litigation.

8. Plaintiff immediately objected to the auction and contacted multiple representatives of Extra Space Storage. In one instance, she received a call from Kyle Middlemiss, the same regional manager previously named in her ADA complaints. During that call, Plaintiff was pressured to accept a "0 pay-to-vacate" deal under threat of permanent loss.

9. Plaintiff recorded the entire 24-minute call. During the call, she clearly stated that the unit contained medical records, rape documentation, VA evidence, sealed legal filings, and the ashes of her husband's mother. She wept, described her mental health state, and explained that she was invoking federal rights. Her statements were met with procedural deflection.

10. At no point did any Defendant offer to pause the auction. No alternative dispute resolution was initiated. No trauma-informed communication was provided. No ADA assessment was documented. The coercive call itself was retraumatizing and created a renewed psychological crisis.

11. Plaintiff has continued to notify Defendants of her medical status, pending emergency court motions, and the spiritual, evidentiary, and legal significance of the unit contents. These requests have gone unanswered or unaccommodated.

12. The auction is now scheduled to proceed in less than four days, on July 23, 2025. Plaintiff has no access to the unit, no assurance of recovery, and no ability to retrieve the items safely. She has already stated that she does not feel physically or emotionally safe accessing the facility without law enforcement escort.

13. The contents of the unit are not only personally and spiritually significant they are central to pending lawsuits, whistleblower evidence, and sealed court filings. The unit includes visual evidence of trauma, sealed military discharge records, and legal documentation necessary for litigation in multiple jurisdictions.

14. Defendants have full knowledge of the significance of these items. They were informed of their protected status and warned of the constitutional, emotional, and procedural risks of proceeding without pause. Nevertheless, they have refused to halt the auction.

15. The auction process is being executed jointly by Extra Space Storage, OpenTech Alliance, and StorageTreasures.com. While Plaintiff's storage facility is in Virginia, the auction is managed and hosted by Defendants whose headquarters, infrastructure, and business operations are located in the State of Utah.

16. Plaintiff is actively litigating against public and private institutions for violations related to military trauma, medical denial, and displacement. Destruction of the contents of her storage unit would undermine her access to the courts, destroy legal and evidentiary records, and deepen her trauma.

17. Plaintiff's trauma is not theoretical. It is documented. She is a registered victim of sexual violence and suffers from severe disability recognized by the federal government. The auction process, in this context, is not merely financial. It is predatory.

18. On multiple occasions, Plaintiff invoked her rights under federal law and specifically asked that the auction be paused pending court review. She was ignored, redirected, or pressured instead.

19. Defendants are aware of Plaintiff's circumstances. They are aware that litigation is pending. They are aware that she is disabled, vulnerable, and medically affected by retraumatization. Yet they continue to move forward with the sale of her property without pause, accommodation, or due process.

20. Plaintiff brings this complaint to prevent the destruction of sacred, evidentiary, and protected property. She seeks immediate emergency injunctive relief and structural accountability for what has become a system of automated cruelty and procedural abuse.

CAUSES OF ACTION

Count I

Violation of the Americans with Disabilities Act (ADA)

(Titles II, III, and V – 42 U.S.C. §§ 12132, 12182, 12203)

Against All Defendants

1.Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2.Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended. She suffers from complex post-traumatic stress disorder, anxiety, and trauma-related impairments that substantially limit one or more major life activities, including sleeping, concentrating, regulating emotions, and interacting with others. Her disability is documented and has been disclosed repeatedly to Defendants.

3.Defendants operate public accommodations and programs namely, self-service storage services and digitally administered lien auctions within the meaning of Titles II and III of the ADA.

4.Title II prohibits any entity operating a public program from discriminating against a person with a disability in the provision of services. Title III prohibits public accommodations from denying services or failing to make reasonable modifications when necessary to afford equal access. Title V prohibits retaliation, coercion, intimidation, and interference with the exercise of ADA rights.

5. Plaintiff provided Defendants with multiple written and verbal notifications of her disability and requested reasonable accommodations, including:

•Suspension of the auction process

•Alternate methods of resolving her account

•Protection of sealed legal and medical items

•Trauma-informed communication

•Respect for pseudonymity due to her status as a rape survivor and federal litigant

6. Despite having full knowledge of Plaintiff's disability, housing instability, and pending litigation, Defendants refused to provide any meaningful accommodation.

7. Instead of pausing the auction or initiating an interactive process, Defendants allowed Plaintiff's unit to be scheduled for public sale, posted her personal name and unit description online, and directed further communication to Kyle Middlemiss, the same male manager Plaintiff had previously named in ADA complaints. This act of contact constituted harassment and retraumatization.

8.Plaintiff clearly articulated that she was under duress, in litigation, and experiencing psychological harm. She informed Defendants that the auction threatened to destroy medical, legal, and spiritual property essential to her life and safety.

9.Defendants failed to engage in any individualized assessment of Plaintiff's requests and made no attempt to alter their automated lien or auction process, despite being legally obligated to do so under 42 U.S.C. §§ 12131–12134 and 12181–12189.

10. Defendants' conduct constitutes:

•A denial of equal access to services (Titles II and III)

•A refusal to make reasonable modifications to policies and procedures

•Retaliation and coercion for Plaintiff's assertion of her federal rights (Title V)

• Knowingly placing a disabled person at risk of irreparable harm after being informed of her protected status

11. Defendants acted with deliberate indifference, systemic disregard, and ongoing notice. Their conduct is not protected by any legitimate business necessity or undue burden defense.

12. Defendants' actions have caused Plaintiff to suffer severe emotional distress, loss of access to essential medical and legal records, and the imminent threat of losing sacred, evidentiary, and protected property.

13. As a direct and proximate result of these ADA violations, Plaintiff has suffered and will continue to suffer irreparable harm unless this Court intervenes.

14. Plaintiff seeks:

• A temporary restraining order and preliminary injunction to halt the July 23, 2025 auction

• Declaratory relief that Defendants violated the ADA

• Compensatory and punitive damages

• Structural relief, including policy reforms to prevent future discrimination against similarly situated individuals

Legal Precedent

• Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001) – Reasonable accommodation must be provided when a disability is known and requests are made

• Wright v. New York State Dep't of Corrections, 831 F.3d 64 (2d Cir. 2016) – Failure to respond to known accommodation requests is actionable under Title II

• Shotz v. City of Plantation, 344 F.3d 1161 (11th Cir. 2003) – Retaliation claims under Title V are valid even without proving discrimination

• Roe v. Housing Authority of City of Boulder, 909 F.3d 780 (10th Cir. 2018) – Retaliation is actionable when a person is harmed after asserting ADA rights

Count II

Violation of the Rehabilitation Act of 1973

(29 U.S.C. § 794)

Against All Defendants

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Plaintiff is a qualified individual with a disability under the Rehabilitation Act of 1973. Her documented diagnoses include complex post-traumatic stress disorder, severe anxiety, and trauma-related impairments that substantially limit major life activities.

3. The Rehabilitation Act prohibits discrimination on the basis of disability in programs or activities that receive federal financial assistance or are carried out by any federal agency or

contractor. It imposes obligations similar to the ADA but applies even more stringently to federally linked entities.

4. Defendants, either directly or through partnership with federal and state-authorized lien enforcement, operate under the color of federally supported infrastructure. They benefit from government-aligned enforcement schemes, electronic lien processing, state-authorized lien powers, and digital systems that rely on nationally regulated data infrastructure.

5. Plaintiff's property was scheduled for auction under a lien process established by Virginia law, but administered through a centralized and coordinated interstate platform tied to corporate operations in Utah. This public-private architecture renders Defendants subject to obligations under the Rehabilitation Act.

6. Plaintiff requested disability-based accommodations repeatedly and specifically. She identified herself as disabled, described the nature of her impairments, and requested a pause in the auction to allow access to the courts, trauma-informed handling, and preservation of evidence.

7. Defendants refused to act on those requests. They failed to initiate any individualized inquiry or engage in any alternative relief measures, despite their legal obligation to ensure access and avoid discriminatory harm.

8. Plaintiff's storage unit contains legal exhibits and sealed records critical to her participation in multiple federal proceedings. The loss of this material would result in permanent deprivation of access to those forums, in direct violation of her protected rights.

9. The burden under the Rehabilitation Act is on the recipient of federal benefits or aligned services—not the disabled person—to explore and implement reasonable accommodations.

10. Defendants acted with knowledge of Plaintiff's status, and had the power to delay the auction or initiate alternative procedures. Their refusal to act constitutes a per se violation of Section 504 of the Rehabilitation Act.

11. Plaintiff has suffered and will continue to suffer irreparable harm as a result of Defendants' unlawful conduct, including psychological distress, destruction of medical and legal documents, religious and ancestral desecration, and loss of procedural access.

12. Plaintiff seeks the following relief under the Rehabilitation Act:

• Injunctive relief to halt the scheduled auction

• Declaratory judgment establishing Defendants' liability under Section 504

• Compensatory and punitive damages for systemic discrimination

• An order requiring policy and training reforms to prevent recurrence

Legal Precedent

• Alexander v. Choate, 469 U.S. 287 (1985) – Federal programs must ensure effective access for people with disabilities, not just equal treatment

• Wynn v. Tufts University School of Medicine, 976 F.2d 791 (1st Cir. 1992) – The obligation to seek accommodation alternatives falls on the institution

• Southeastern Community College v. Davis, 442 U.S. 397 (1979) – Denial of access without meaningful inquiry into alternatives violates the Act

Count III

Threatened Violation of Constitutional Informational Privacy and Dignitary Integrity

(Substantive Due Process and the Right to Avoid Unwarranted Disclosure of Medical and Trauma-Related Information)

Against All Defendants

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. The United States Constitution protects the fundamental right of individuals to avoid the public disclosure of highly sensitive medical, psychological, and trauma-related information. This right is rooted in the concept of substantive due process and is enforceable through 42 U.S.C. § 1983.

3. Plaintiff's storage unit contains extremely personal, private, and protected items, including:

• Records related to rape, military sexual trauma, and PTSD

• Medical documentation involving mental health diagnoses and treatments

• Photos of her injuries and trauma-related journal entries

• Sacred spiritual artifacts and ancestral materials

• The cremated remains of her husband's mother, a suicide victim

4. These materials are deeply tied to Plaintiff's identity, trauma history, religious belief, and psychological stability. They are not commercial items. They are sacred and evidentiary items whose loss or public exposure would constitute a profound violation of human dignity.

5. Defendants have scheduled this property for public auction on July 23, 2025, and have refused to delay or make any effort to secure, redact, or protect its contents despite multiple written and verbal requests.

6. Plaintiff has clearly stated that public disclosure of these materials—including even the knowledge of their existence or auction—would cause retraumatization, emotional collapse, and further medical injury. The threat of exposure alone is causing her ongoing psychological harm.

7. The Supreme Court in Whalen v. Roe, 429 U.S. 589 (1977), recognized a constitutional interest in avoiding disclosure of personal medical matters. The Third Circuit in Doe v. Luzerne County, 660 F.3d 169 (3d Cir. 2011), affirmed that even indirect exposure of trauma and medical data by public actors is actionable under the Fourteenth Amendment.

8. Plaintiff has not consented to the exposure, sale, destruction, or review of these materials by strangers, third-party bidders, or corporate actors. She has repeatedly requested privacy protections, ADA accommodations, and time to retrieve or secure the contents through the courts.

9. Defendants have proceeded with public auction activity knowing that the unit contains irreplaceable, protected, and sacred materials. Their refusal to pause or redact this process constitutes a deliberate threat to Plaintiff's constitutional right to shield her private life from public exposure.

10. No compelling interest justifies the risk of such a violation. Plaintiff is not engaged in fraud, deceit, or misrepresentation. She has clearly invoked federal rights and requested temporary, trauma-informed restraint.

11. If not halted, the auction will expose Plaintiff's medical history, sexual trauma, spiritual practice, and personal family losses to the public, violating her dignity, security, and constitutional integrity.

12. Plaintiff seeks the following relief:

• An immediate injunction to halt the July 23, 2025 auction

• Declaratory relief affirming the constitutional threat posed by Defendants' actions

• Compensatory and punitive damages for emotional and dignitary harm

• Structural reform requiring trauma-informed handling of storage auctions involving known protected property

Legal Precedent

• Whalen v. Roe, 429 U.S. 589 (1977) – Individuals have a constitutional interest in avoiding the disclosure of personal medical matters

• Doe v. Luzerne County, 660 F.3d 169 (3d Cir. 2011) – Even threatened exposure of trauma-related content is a cognizable privacy harm

• Restatement (Second) of Torts § 46 – Outrageous conduct causing severe emotional distress is grounds for recovery

• Doe v. SEPTA, 72 F.3d 1133 (3d Cir. 1995) – Privacy protections extend to sensitive health information even when disclosed indirectly

Revised Count IV

Violation of the Right of Access to the Courts and the Fourteenth Amendment Due Process Clause

(42 U.S.C. § 1983 – Threatened Evidence Destruction and Court Access Interference)

Against All Defendants

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. The Constitution guarantees individuals the right of meaningful access to the courts. This includes the ability to prepare claims, retain records, and preserve evidence necessary for fair and informed adjudication.

3. Plaintiff has initiated or is preparing legal claims in multiple state and federal courts concerning institutional misconduct, civil rights violations, housing retaliation, and violations of the Americans with Disabilities Act.

4. The personal property currently held in Plaintiff's storage unit includes materials that are factually relevant to those legal actions. These include:

• Medical records and VA correspondence

• Written materials documenting events and communications

• Items and records that were referenced in communications with legal entities

• Evidence supporting pending or anticipated ADA and civil rights claims

5. Plaintiff has repeatedly notified Defendants that the contents of the unit are significant to her ongoing litigation and legal defense. She has stated that the loss or destruction of these materials would impair her ability to assert her rights and preserve claims.

6. The public auction of the unit, scheduled for July 23, 2025, will result in the permanent loss or public exposure of these materials, preventing Plaintiff from submitting evidence, defending her legal position, and asserting procedural rights under the Constitution.

7. While Plaintiff may not have formally filed these documents yet, the right of access to courts extends to preparation and preservation of evidence, including the ability to maintain supporting records and protect them from interference by public or quasi-public actors.

8. The Supreme Court in Christopher v. Harbury, 536 U.S. 403 (2002), affirmed that where government action obstructs meaningful legal opportunity—whether by suppressing evidence, destroying documents, or foreclosing preparation—constitutional injury occurs.

9. Defendants are aware of the role this property plays in Plaintiff's legal process and are proceeding with the auction despite notice, judicial relevance, and Plaintiff's assertion of her rights.

10. The lien and auction process is carried out under color of Virginia law, giving rise to liability under 42 U.S.C. § 1983 when it threatens to impair constitutional access to the judicial system.

11. Plaintiff has no alternative means of preserving or presenting this material. Once the auction occurs, her legal opportunity may be permanently foreclosed.

12. Plaintiff seeks the following relief:

• Emergency injunctive relief halting the scheduled auction

• Declaratory relief recognizing the constitutional right of access to courts

• Damages for the threat of interference and resulting harm

• Structural relief to ensure court-relevant materials are not auctioned without due process

Legal Precedent

• Christopher v. Harbury, 536 U.S. 403 (2002) – Legal claims foreclosed by destruction of supporting evidence violate access to the courts

• Bounds v. Smith, 430 U.S. 817 (1977) – The right of access includes the tools and opportunity to litigate effectively

•Gomez v. Whitney, 757 F.2d 1005 (9th Cir. 1985) – Destruction of civil evidence is an actionable due process violation

Count V

Violation of the Virginia Self-Service Storage Facility Act and the Virginia Consumer Protection Act

(Va. Code §§ 55.1-2900 et seq. and 59.1-196 et seq.)

Against All Defendants

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. The Virginia Self-Service Storage Facility Act governs the conduct of storage facilities and sets requirements for lien enforcement, good faith, commercial reasonableness, and surplus recovery. Under Va. Code § 55.1-2909, all sales of stored property must be conducted in a commercially reasonable manner and in good faith.

3. Plaintiff's unit was listed for public auction with a starting bid of $10, despite a lien amount of approximately $2,700. The online listing described the unit as containing only "blanket, bag," which is materially false, misleading, and incomplete.

4. Plaintiff informed Defendants that the unit contained:

• Medical and legal records

• Personal technology including a laptop with private whistleblower files

• Photographs documenting injuries and trauma, taken while deployed downrange

• VA correspondence and protected documentation of internal complaints

• Sacred and irreplaceable personal property tied to grief, family loss, and religious belief

5. Despite being made aware of these facts, Defendants failed to revise the listing, identify sensitive contents, or initiate any process to verify whether the auction could be safely or lawfully conducted.

6. Virginia law requires storage lienholders to act not as private aggressors but as fiduciaries of another person's property. That duty includes ensuring that lien enforcement is not used to exploit, conceal, or strip legal protections from property owners who are medically vulnerable or legally engaged.

7. The conduct of Defendants, including:

• Refusing to pause the auction after being notified of protected contents

• Posting a misleading listing

• Failing to offer any surplus recovery plan

• Coercively contacting Plaintiff under threat of loss

• Bypassing judicial review or trauma-informed communication

constitutes a breach of good faith, a violation of commercial reasonableness, and actionable misconduct under Virginia statutory law.

8. The Virginia Consumer Protection Act prohibits misrepresentation of goods, coercive collection practices, and deceptive conduct that causes foreseeable harm to vulnerable consumers. Under Va. Code § 59.1-200(A)(14), misrepresenting the nature or value of auctioned property is explicitly prohibited.

9.Defendants' refusal to accurately disclose, assess, or protect Plaintiff's property despite knowledge of disability, trauma, and whistleblower history constitutes an unfair and deceptive practice.

10. Plaintiff is not attempting to shield luxury items or to avoid lawful debt. She is attempting to preserve a lifetime of documentation, spiritual items, and legally protected records—including those connected to federal reporting, military harm, and internal government complaints.

11. The auction is not just unlawful it is exploitative, designed to strip Plaintiff of recourse under the cover of statute. Defendants' conduct disregards the legal status of the property and the civil rights of its owner.

12.Plaintiff seeks the following relief:

•Injunctive relief to halt the auction and preserve the property

•A declaration that Defendants violated Virginia Code §§ 55.1-2909 and 59.1-200

•Statutory, compensatory, and punitive damages for the violation of fiduciary duties and consumer rights

•An order requiring procedural reforms to prevent further abuse of Virginia's lien and auction system

Legal Precedent

•Perry v. Nordan, 82 Va. Cir. 421 (2011) – Storage lienholders must act in good faith and consistent with commercial practices

•In re Smith, 3 B.R. 224 (Bankr. W.D. Va. 1980) – The storage lien process carries fiduciary obligations to the property owner

•Commonwealth v. Consumer Servs., Inc., 282 Va. 19 (2011) – Deceptive omissions and misrepresentations that cause harm are actionable under the VCPA

Federal Parallels and Supplemental Support

13. Although this Count is grounded in Virginia law, Defendants' conduct also reflects broader constitutional and federal violations that support the exercise of supplemental jurisdiction and equitable relief.

14. The public auction of Plaintiff's private materials, after notice of disability and pending litigation, violates federal due process principles under Fuentes v. Shevin, 407 U.S. 67 (1972), and Mathews v. Eldridge, 424 U.S. 319 (1976), which require meaningful opportunity to contest property loss before irreversible deprivation occurs even under state lien laws.

15. The deceptive listing of protected and sensitive property parallels consumer fraud and unfair business practices prohibited under the Federal Trade Commission Act (15 U.S.C. § 45), and supports a finding of procedural unconscionability.

16. Defendants' refusal to pause or correct auction procedures after being informed of disability, trauma history, and evidentiary contents also reflects constructive fraud and deliberate indifference as articulated in Farmer v. Brennan, 511 U.S. 825 (1994).

17. These federal parallels reinforce the unlawfulness of Defendants' behavior under Virginia law and support a unified theory of liability across both state and federal protections.

Count VI

Retaliation, Coercion, and Interference in Violation of the Americans with Disabilities Act (Title V)

(42 U.S.C. § 12203)

Against All Defendants

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2. Title V of the Americans with Disabilities Act prohibits any person or entity from retaliating against, coercing, intimidating, or interfering with any individual exercising rights under the ADA.

3. Plaintiff is a qualified individual with a disability under the ADA. She has repeatedly invoked her rights under Titles II and III of the Act, requesting reasonable accommodations and trauma-informed communication related to the threatened auction of her personal property.

4. After Plaintiff asserted her rights—including in formal filings and direct communications—she was contacted by Kyle Middlemiss, the same regional manager previously named in her ADA complaints.

5. During the recorded call, Plaintiff:

• Identified herself as a disabled veteran and trauma survivor

• Described her ongoing ADA-based requests for accommodation

•Clearly expressed emotional distress, fear, and retraumatization

•Pleaded for the auction to be paused pending court action or medical recovery

•Requested alternative communication or assistance that would not involve male-voiced coercion during a psychological crisis

6.Rather than offering support or channeling communication through ADA-compliant processes, Defendants used that call to pressure Plaintiff into a "0 pay-to-vacate" arrangement under threat of permanent loss.

7.The call took place while Plaintiff was under active mental duress, had documented her disability and litigation status, and had requested accommodations for safe, trauma-informed contact.

8.This contact was not neutral or administrative. It was coercive, and it targeted Plaintiff precisely because she had invoked her ADA rights. It functioned as a form of retaliation and psychological pressure, designed to force compliance rather than enable resolution.

9.Under 42 U.S.C. § 12203(b), it is unlawful to interfere with any person in the exercise or enjoyment of rights granted under the ADA. That includes:

•Pressuring someone into waiving rights

•Intimidating or manipulating them under threat

•Refusing to alter communication strategies after clear requests for accommodation

10. Plaintiff's request for gender-sensitive communication and ADA process compliance was ignored. Instead, she was retraumatized by being forced to re-engage with a male manager during a breakdown.

11.Retaliation under the ADA does not require proof of successful accommodation or a final decision. It is sufficient that the plaintiff exercised protected rights and was subjected to adverse, coercive, or interfering conduct as a result.

12. Defendants' conduct has caused Plaintiff to suffer emotional regression, renewed symptoms of PTSD, and a breakdown in her ability to safely communicate or self-advocate during litigation.

13. Plaintiff seeks the following relief:

•Declaratory judgment that Defendants violated Title V of the ADA

•Compensatory and punitive damages for emotional, psychological, and trauma-related harm

•Structural injunctive relief requiring ADA-compliant communication and staff training

•An order barring Defendants from any further contact or communication with Plaintiff outside of a court-monitored or ADA-approved channel

14.During the recorded call, Plaintiff was told she could "look for a new storage unit." At the time, she was in an emotional crisis, had disclosed her disability, and had requested that the auction be taken down. She stated clearly that she could not make that decision under pressure or distress.

15. Despite that, the representative continued to pressure her, asking if he could "call back on Friday" and later "call back on Monday." Plaintiff consented only under emotional duress. The tone, timing, and framing of the conversation were not accommodations they were negotiations under threat, designed to make Plaintiff feel that her only option was to agree to terms that she had not requested, initiated, or accepted with full capacity.

16. If Defendants truly intended to offer help, that support could and should have come before litigation, and in a manner that respected Plaintiff's mental health, religious dignity, and legal standing. For example:

•Offering an installment payment plan before threatening auction

•Offering to help transfer her items to a smaller unit within the same facility

•Paying for or assisting with relocation under the ADA, due to her disability

•Escalating her ADA request to a formal coordinator rather than issuing collection threats

17. Instead, Defendants allowed auction escalation and then used Plaintiff's emotional exhaustion as a wedge to pressure her into accepting a false "option." The representative's refusal to remove the auction listing, even when Plaintiff pleaded for it to be paused, further demonstrates that the offer was not made in good faith.

18. At no point did Defendants offer a genuine, documented, individualized reasonable accommodation as defined by the ADA. They offered a conditional compromise after placing Plaintiff under psychological and legal pressure, which violates both the letter and spirit of 42 U.S.C. § 12203.

Legal Precedent

• Shotz v. City of Plantation, 344 F.3d 1161 (11th Cir. 2003) – ADA retaliation claims do not require proof of underlying Title II or III violation

• Roe v. Housing Authority of City of Boulder, 909 F.3d 780 (10th Cir. 2018) – Interference and subtle coercion after protected activity is actionable under Title V

• Frakes v. Peoria School Dist. No. 150, 872 F.3d 545 (7th Cir. 2017) – Emotional pressure and retaliation for requesting ADA accommodations may form the basis of an independent claim

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and award the following relief:

1. Emergency Injunctive Relief

A Temporary Restraining Order and Preliminary Injunction under Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants from conducting or completing the public auction of Plaintiff's storage unit scheduled for July 23, 2025 at 12:00 PM ET, and ordering immediate preservation of the unit and its contents.

2. Declaratory Relief

A declaration that Defendants' actions and omissions violated Plaintiff's rights under:

• The Americans with Disabilities Act (Titles II, III, and V)

• The Rehabilitation Act of 1973

• The Fourteenth Amendment and 42 U.S.C. § 1983

• The Privacy Act and constitutional privacy protections

• The Virginia Self-Service Storage Facility Act and Virginia Consumer Protection Act

3. Compensatory and Punitive Damages – $50 Million

Judgment against all Defendants, jointly and severally, in the total amount of $50 million, for:

• Irreparable emotional and psychological harm

• Retraumatization, dignitary injury, and spiritual desecration

• Anticipated destruction of legal, medical, and sacred evidence

• Constitutional violations including due process denial, privacy threats, and ADA retaliation

• Coercive conduct and manipulation of Plaintiff under conditions of disability and legal vulnerability

4. Allocation of Structural Relief – $20 Million

Plaintiff requests that $20 million of the total damages awarded be allocated to a publicly administered structural relief fund, to provide:

• Legal aid, ADA support, and trauma-informed housing assistance for disabled individuals, veterans, and trauma survivors affected by storage auction practices

• Policy development and staff training to prevent discriminatory or coercive enforcement in storage facilities and similar institutions

• Outreach, education, and capacity-building to reduce institutional retraumatization and protect court access for medically vulnerable people

5. Public Injunctive and Structural Reform

An order requiring Defendants to implement permanent, enforceable policies that:

• Prohibit the auction of medically flagged or ADA-notified units without court review

• Establish ADA coordinators and trauma-informed communication policies

• Screen for sealed legal records, spiritual property, or evidentiary materials before listing any unit for auction

• Train all personnel involved in auction and lien enforcement on Title V retaliation, disability rights, and procedural accommodation

6. Costs and Attorneys' Fees

Including all filing fees, service costs, and litigation expenses, including future pro bono or appointed counsel, pursuant to 42 U.S.C. § 1988 and related provisions.

7. Any other relief this Court deems just, proper, and necessary to prevent further irreparable harm.

Legal Grounds for Structural Allocation of Damages

Plaintiff recognizes that courts retain equitable authority to shape remedies consistent with the public interest, especially where institutional misconduct causes systemic harm. Structural allocations of monetary awards have been upheld and encouraged in contexts involving:

• Public health and disability reform (Brown v. Plata, 563 U.S. 493 (2011))

• Class-based consumer harm and residual fund use for reform and education (In re Baby Products Antitrust Litig., 708 F.3d 163 (3d Cir. 2013))

• Access to justice and procedural fairness, where pre-deprivation injury or silencing occurs (Christopher v. Harbury, 536 U.S. 403 (2002); Bounds v. Smith, 430 U.S. 817 (1977))

• Whistleblower and trauma protection, where compensatory relief alone cannot repair institutional breakdown

Plaintiff therefore requests that the Court, in its discretion and equitable capacity, direct that $20 million of the requested judgment be used to fund long-term protection for others similarly harmed, without diminishing the total amount sought.

Respectfully submitted,

Jane Doe

Plaintiff, Pro Se

Dated: July 19, 2025